PITNEY HARDIN LLP

(MAIL TO)
P.O. BOX 1945
MORRISTOWN, NEW JERSEY 07962-1945

(DELIVERY TO)
200 CAMPUS DRIVE
FLORHAM PARK, NEW JERSEY 07932-0950
(973) 966-6300
FACSIMILE (973) 966-1015

MICHAEL E. WALLER

DIRECT DIAL NUMBER
973-966-8084

NEW YORK, NEW YORK
(212) 297-5800
FACSIMILE (212) 916-2940

BRUSSELS, BELGIUM
32-02-514-54-19
FACSIMILE 32-02-514-16-59

June 24, 2005

**BY UPS OVERNIGHT DELIVERY AND ELECTRONIC FILING**

Honorable Ann E. Thompson, U.S.D.J.
United States District Court
Clarkson S. Fisher Federal Bldg. & U.S. Courthouse
402 East State Street
Trenton, NJ 08608

Re: The GetPaid Corporation v. Helix Systems, Inc., et al.
Civil Action No. 02-1512

Dear Judge Thompson:

We write on behalf of the Defendants Helix Systems, Inc., Six Sigma Academy, James Anderson, and Scott Caudill (collectively the "Helix Defendants"). On or about June 2, 2005, Plaintiff, The GetPaid Corporation ("GetPaid"), filed a motion to dismiss its claims against Defendants James V. Gelly ("Gelly"), Keesah Software Corporation ("Keesah") and Bilaji Prakash-Rao ("Bilaji")(collectively the "Settling Parties"), which was made returnable on July 5, 2005. Your Honor granted the motion on June 7, 2005, which was prior to the June 27, 2005 date for submission of any objections. For the following reasons, the Helix Defendants respectfully request that the Order granting GetPaid's motion to dismiss be vacated and a new Order be entered denying the motion and requiring GetPaid to produce to the Helix Defendants the Settlement Agreement between it and the Settling Parties.

## BACKGROUND

The following is a brief recitation of the relevant facts in this matter.

### A. Honeywell's Relationship With GetPaid

In 1999, Honeywell decided to integrate its credit, accounts receivable collection, and dispute resolution efforts among all of its business units. In Mid-1989, Anderson along with other Honeywell employees from the Information Technology Department, attended a demonstration of GetPaid Corporation's ("GetPaid) software. After receiving GetPaid's assurances that the software would work as promised, Honeywell decided to license the GetPaid Software.

After entering into the license agreement, the GetPaid software failed to perform as promised. To help correct the situation, Caudill had two meetings with GetPaid representatives to discuss problems relating to the GetPaid software and its implementation, along with GetPaid's inability to solve them. In particular, Honeywell pointed out that the GetPaid software was not producing reports as required and other deficiencies with regard to the reporting capabilities of the GetPaid software. GetPaid was unable to correct the identified shortcomings in its programs.

### B. GetPaid's Failure And The Creation Of eReceivables By Honeywell

As a result of GetPaid's failure to meet Honeywell's functional needs and perform all of the terms of the contract, in late 2000, Honeywell decided to develop its own accounts

receivable/collection software, that eventually became known as eReceivables. By January 2001, system testing on eReceivables was completed and Honeywell began interfacing data from its own accounts receivable systems to eReceivables.

**C. Creation of METREQ**

In early 2001, Honeywell employees, including Defendants Anderson and Caudill, learned that there would be substantial corporate layoffs as a result of the impending merger between Honeywell and General Electric ("GE"). Given their extensive backgrounds in information technology, finance and credit and collections, Anderson and Caudill considered forming their own consulting business. In March and April of 2001, Anderson and Caudill spoke with Six Sigma representatives regarding their consulting business, and the possibility of Anderson and Caudill working with Six Sigma. Among other things, Anderson and Caudill discussed developing accounts receivable/collect management and dispute resolution software with Six Sigma.

On June 4, 2001, Anderson and Caudill formed Helix, without the assistance of Honeywell or Six Sigma. Subsequently, Anderson and Caudill signed consulting agreements with Six Sigma, and Helix and Six Sigma entered into a written software development agreement. The agreement provided that Helix would develop software for Six Sigma; Six Sigma would pay Helix a fixed sum for the development of the software, and Six Sigma would

own the intellectual property rights to the software. Helix would also be entitled to some future royalties. Helix would be responsible for providing support and maintenance for the software.

Thereafter, Anderson and Caudill began working on the design requirements for Helix's initial software project. The project, called METREQ, was an accounts receivables program to aid businesses in collections and tracking of monies due and owing. In mid-2001, Anderson and Caudill contacted Bilaji Prakash-Rao[2] to see if he was interested in writing the software code. Bilaji was interested and, on July 19, 2001, he formed Keesah. Anderson and Caudill provided Keesah with the design and functional requirements for the software; Keesah was to perform all necessary coding and other technical work related to the development of METREQ. Bilaji was advised by Anderson and Caudill to develop METREQ without copying other software in the field, including eReceivables and GetPaid.

Six Sigma advertised METREQ software through its website and in January 2002, a representative from Emerson Electric Company ("Emerson") contacted Helix and requested a demonstration of METREQ. Helix subsequently entered into an agreement with Emerson; Emerson was the first and only licensee of the METREQ software. To date, Six Sigma, Helix, Caudill, and Anderson have made no profit on the Emerson License Agreement.

Thereafter, GetPaid filed this lawsuit alleging that Honeywell's eReceivables, and the Helix Defendants' METREQ software duplicated and copied GetPaid's software.

---

[1] Anderson and Caudill were colleagues with Bilaji at Honeywell.

**D. Letter From GetPaid's Counsel Informing Emerson That GetPaid Had Settled This Matter With The Settling Parties, And Threatening Litigation With Emerson.**

On May 27, 2005, Bernard J. Bonn, Esq. of Dechert LLP, GetPaid's counsel wrote to counsel for Emerson. A true copy of the correspondence is attached hereto as Exhibit A. As can be seen, GetPaid is using the Settlement Agreement and purported assignment of rights offensively, and is attempting to induce a breach of the contract between Emerson and Six Sigma.

On pages two and three of the attached letter, Mr. Bonn alleges that:

- [w]e can provide unequivocal evidence that METREQ is based on GetPaid's trade secrets. Moreover, GetPaid owns the eReceivables software and the copyright in eReceivables, which were assigned to it by Honeywell. A copy of the assignment is enclosed. Thus GetPaid now relies on both its Intellectual Property rights in the GetPaid software and on its ownership of eReceivables and the copyright thereto, and thus GetPaid is demanding that Emerson *immediately cease and desist its unauthorized use of GetPaid's Intellectual Property as embodied in METREQ*.

- [GetPaid's expert's] unequivocal conclusion is that eReceivables was derived from the GetPaid software using GetPaid's trade secrets and that METREQ 'was copied' from eReceivables.

- [T]he expert retained by Six Sigma, Dr. Steven Kursh, confirmed in deposition testimony in the arbitration between Honeywell and GETPAID . . . that there is evidence of copying between METREQ and eReceivables.

> Furthermore, . . . Honeywell – which also used Dr. Kursh as its expert – conceded that METREQ had been copied from eReceivables. Thus, SixSigma (sic) had no right to license METREQ to Emerson, and ***Emerson has no right to use or posses*** (sic) ***METREQ***.

- GetPaid already has established the viability of its claim regarding eReceivables, and METREQ is a knock off of eReceivables.

Following this litany of problems and threats, GetPaid offers Emerson two alleged choices. The first is that Emerson would gradually discontinue its use of METREQ, begin using GetPaid's software, and pay GetPaid, as compensation for GetPaid's alleged intellectual property embodied in METREQ, a $6,000.00 per user charge while Emerson was switching over. The second is that Emerson cease using METREQ immediately and pay GetPaid approximately $2.5 million dollars, the amount of alleged damages calculated by GetPaid's financial expert.

GetPaid's use of the Settlement Agreement to induce Emerson to breach is objectionable because it would strip the Helix Defendants of their contractual rights, and would drive a competitive product out of the marketplace. Moreover, GetPaid's May 27, 2005 correspondence to Emerson is factually inaccurate in numerous respects, and is potentially tortious. Examples of this are the statement that SixSigma has no right to license METREQ to Emerson; Emerson has no right to use or possess METREQ; GetPaid has established the viability of its claim regarding eReceivables; and METREQ is a knock off of eReceivables. Moreover, GetPaid has offered absolutely no support for its characterization of the testimony of Dr. Kursh.

GetPaid should not be permitted, through the Settlement Agreement, to prejudice the Helix Defendants' rights, and this Court should therefore vacate the Order granting GetPaid's motion to dismiss, enter a new Order denying the motion, and also require GetPaid to produce a copy of the Settlement Agreement to the Court and the Helix Defendants to determine the extent to which it prejudices the non-settling parties.

## ARGUMENT

### A. The Order Granting GetPaid's Motion Under FRCP 41(A)(2) Must Be Vacated Because The Settlement And Dismissal Prejudice The Helix Defendants' Legal Rights.

#### 1. Denial Of Motion To Dismiss

Under Rule 41(a)(2) of the Federal Rules of Civil Procedure, "an action shall not be dismissed at the plaintiff's instance save upon order of the court and **upon such terms and conditions as the court deems proper."** (emphasis added). Notably, Rule 41(a)(2) does not require Courts to automatically grant a Plaintiff's application to dismiss. Non-settling defendants are entitled to object when they will suffer prejudice as a result of the dismissal. *County of Santa Fe v. Public Serv. Co. of New Mexico*, 311 F.3d 1031, 1047-48 (10th cir. 2002); *Elbaor v. Tripath Imaging, Inc.*, 279 F.3d 314, 317 (5th Cir. 2002); *D'Alto v. Dahon California, Inc.*, 100 F.3d 281, 283-84 (2d Cir. 1996); *see also Eichenholtz v. Brennan*, 52 F.3d 478, 482 (3d Cir. 1995)(dismissal in context of class action)("There is consensus that a non-settling defendant has standing to object to a partial settlement which purports to strip it of a legal claim or cause of

action, an action for indemnity or contribution for example, or to invalidate its contract rights."); *In re School Asbestos Litig.*, 921 F.2d 1330, 1332 (3d Cir. 1990), *cert. denied,* 499 U.S. 976 (1991)(dismissal in context of class action); *Zupnick v. Fogel,* 989 F.2d 93, 98 (2d Cir.), *cert. denied,* 510 U.S. 945 (1993)(dismissal in context of class action).

Among the factors to be considered in deciding whether to grant a motion under Rule 41(a)(2) are: (1) Plaintiff's diligence in bringing the motion; (2) the presence of any "undue vexatiousness" (*i.e.* willful behavior) on Plaintiff's part; (3) the stage at which the lawsuit is in; (4) the duplicative expense in relitigation; and (5) the adequacy of Plaintiff's explanation for the need to dismiss. *D'Alto*, 100 F.3d at 283, *County of Santa Fe*, 311 F.3d at 1048. In reaching its decision on the motion, a Court must also be mindful of the unique facts of the case and, "should endeavor to insure substantial justice is accorded to both parties . . . ." *County of Santa Fe*, 311 F.3d at 1048. Additionally, when granting a motion pursuant to Rule 41(a)(2), a Court may, in the exercise of its discretion, set forth certain conditions in its order to insure justice. *Elbaor*, 279 F.3d at 317.

In this case, GetPaid has failed to fully articulate all the reasons behind its motion. It has also failed to inform the Court that it is using the Settlement Agreement to try and strip the Helix Defendants of their legal right to market METREQ and otherwise use the Settlement Agreement to the prejudice of non-settling parties. Notably, GetPaid did not submit the Settlement Agreement with its motion papers, or provide any information regarding the terms and conditions therein. Instead of openly disclosing the reasons why the Court should grant its

motion, GetPaid has opted to deliberately withhold facts in this forum, and to disclose them in private correspondence designed to intimidate the Helix Defendants' customer. Moreover, GetPaid has failed to disclose that it is manipulating the behavior of at least one of the Settling Parties, thereby compounding GetPaid's interference with the Emerson contract. Helix had arranged with Keesah to support the METREQ software in use at Emerson. The Helix Defendants were recently advised that Keesah is now "prohibited from providing support to Emerson pursuant to its Settlement Agreement with GetPaid. The Court should not approve of such tactics.

Contrary to the impression created by GetPaid's May 27, 2005 correspondence, the issue of whether METREQ is similar to or infringes upon *eReceivables* is not and never has been an issue in this case or even in the private arbitration between GetPaid and Honeywell. The Helix Defendants have always vigorously defended their right to develop and market METREQ, and will continue to do so through the trial in this matter. Mr. Bonn's and GetPaid's tactic of utilizing evidence from a private arbitration to create the false impression with Emerson that the Helix Defendants are liable to GetPaid must not be permitted. Clearly, GetPaid is attempting to use snippets of information and testimony that was developed in a forum from which the Helix Defendants were excluded.

Settlement agreements are not to be used as a club against innocent third parties. Instead, they ease overtaxed judicial calendars and court resources, and reinforce the long-standing public policy that "parties to a dispute are in the best position to determine how to

resolve a contested matter in a way which is least disadvantageous to everyone." *Department of the Public Advocate, Division of Rate Counsel v. N.J. Board of Public Utilities*, 206 N.J. Super. 523, 528 (App. Div. 1985). Contrary to that useful purpose, GetPaid has elected to approach the Helix Defendants' customer and harass them with unsupported legal conclusions and threats of litigation, predicated on the settlement of issues not even present in this lawsuit.

**2. GetPaid's Offensive Use Of The Settlement Agreement And Its Correspondence With Emerson Are Potentially Actionable, And GetPaid Must Be Ordered To Produce The Settlement Agreement.**

GetPaid's use of the Settlement Agreement in this manner is potentially monopolistic under §2 of the Sherman Antitrust Act, 15 U.S.C. §2. To prove a violation of §2 a Plaintiff need only show that a Defendant: (1) possesses monopoly power in a relevant market and (2) has willfully acquired or maintained that power by anticompetitive or exclusionary acts. *United States v. Grinnell Corp.*, 384 U.S. 563, 570-71 (1966); *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585, 595-596 (1985); *Eastman Kodak Co. v. Image Technical Services, Inc.*, 504 U.S. 451, 481 (1992). Attempted monopolization occurs when the defendant: (1) had a specific intent to monopolize the relevant market; (2) engaged in anti-competitive or exclusionary conduct; and (3) possessed sufficient market power to come dangerously close to success. *Barr Laboratories, Inc. v. Abbott Laboratories*, 978 F.2d 98, 112 (3d Cir. 1992). In this case, GetPaid's contact with Emerson, the only customer using METREQ could be considered attempted monopolization through the use of anticompetitive means. Production of the

Settlement Agreement is required to determine the extent of GetPaid's anticompetitive behavior. Additionally, because the letter sent to Emerson by GetPaid's counsel is factually inaccurate, GetPaid is not only interfering with the Helix Defendant's business relationships, but is also sullying the Helix Defendants' reputation in the trade. The Helix Defendants have the right to pursue their business without interference, and GetPaid's behavior must cease.

Now that it has demonstrated a predisposition to use unfair business tactics, GetPaid must be required to disclose the entire Settlement Agreement to protect the interests of all parties, including Emerson. Mandatory production will allow the parties to stand on a level playing field, and the Helix Defendants can then attempt to undo the harm caused by GetPaid.[3] GetPaid should not be heard to protest such an Order. Its own actions created this situation, and equity demands measures to repair the harm already done, and prevent such damage in the future. GetPaid cannot be trusted to manage itself in that regard, and nothing short of an Order from this Court will have the prophylactic effect called for here. Accordingly, we respectfully assert that the only fair option at this stage is to vacate the June 7, 2005 Order granting GetPaid's

3 For example, GetPaid has demanded, as one option, that Emerson cease using METREQ and pay it approximately $2.5 million dollars, the purported value of the claim. However, GetPaid failed to divulge the amount of value exchanged among the Settling Parties in its demand letter to Emerson. This deliberate failure raises the spectre that GetPaid is attempting to recover more than that to which it may be entitled. It is important for the Helix Defendants to know the amount of value, if any, that was exchanged because if GetPaid should happen to prevail at trial, the Helix Defendants are entitled to a set off on those amounts. *Gulfstream III Assocs v. Gulfstream Aerospace Corp.*, 995 F.2d 425, 436 (3d Cir. 1993). To the extent it settled with the Settling Defendants for no money whatsoever, it is an admission by GetPaid that its claim is valueless. Accordingly, GetPaid must produce the Settlement Agreement and all accompanying documents to the Helix Defendants prior to trial.

motion, enter a new Order denying the same and also Ordering the production of the Settlement Agreement.

**B. GetPaid Is Barred From Utilizing At Trial Any Materials Introduced Or Created At The Private Arbitration With Honeywell.**

Mr. Bonn's letter also highlights a danger to which the Helix Defendants alerted the Court over a month ago – GetPaid cannot be permitted to us evidence from a private arbitration in this matter. The Helix Defendants did not participate in the private arbitration between GetPaid and Honeywell, had no notice of the events as they occurred in that proceeding, and had no opportunity to be heard in that private matter. The Helix Defendants were not permitted to submit materials to the arbitration panel, introduced none of their own evidence, presented no witnesses and did not cross examine any of the witnesses that were presented.

In fact, every other party to this lawsuit and their counsel, with the exception of GetPaid and Honeywell, were excluded from the arbitration. For example, when George Jones, Esq., the attorney for Keesah and Bilaji Prakash-Rao, attempted to attend the arbitration on the day his client was called as a witness, Mr. Jones was informed by Mr. Bonn and the arbitration panel that he was not permitted to attend and represent his clients despite the existence of GetPaid's claim against them in this federal action. Accordingly, it cannot be said that the arbitration between Honeywell and GetPaid protected the Helix Defendants due process rights in any manner whatsoever.

"Due process requires that all conflicts over legal rights and obligations be adjudicated in a court of law. Arbitration is an exception to this rule *but it is an exception grounded on the parties' consent.* Without consent, arbitration lacks the power to bind either the parties or a court of law in a subsequent proceeding." *United States ex rel. Pensacola Constr. Co. v. St. Paul Fire and Marine Ins. Co.*, 705 F. Supp. 306, 314 (W.D. La. 1988) (citing *United Steelworkers of Am. v. Enterprise Wheel and Carriage Corp.*, 363 U.S. 593, 597 (1960); *Davis v. Chevy Chase Fin. Ltd.*, 667 F.2d 160, 165 (D.C. Cir. 1981); and RESTATEMENT (SECOND) OF JUDGMENTS § 84 cmt. d (1984) (emphasis added)). To allow the use of evidence from the Honeywell/GetPaid arbitration in the Helix Defendants/GetPaid trial in this Court is tantamount to continuing a violation of the Helix Defendant's due process rights.

The evidence in the GetPaid arbitration was cultivated and groomed by GetPaid in the absence of the Helix defendants. By its very nature the evidence is highly suspect, particularly the transcripts of testimony of witnesses. There was no opportunity for the Helix Defendants to fairly cross-examine witnesses in a manner fitting their case, the Helix Defendants were not present to rebut GetPaid's expert, and could not be present to object to the introduction of various documents as evidence. GetPaid simply wants to use the evidence from the arbitration to tilt the playing field in its favor, and due process protects the Helix Defendants from precisely that type of tactic.

To the extent GetPaid is hoping that the arbitration evidence will have a preclusive effect, case law is clear that the evidence is afforded no special treatment whatsoever.

In fact, because the Helix Defendants were not a party to the arbitration GetPaid is ***barred*** from using any facts adduced at the arbitration in this proceeding. *United States ex rel. Pensacola Construction Co. v. St. Paul Fire and Marine Ins. Co.*, 705 F. Supp. 306, 314 (W.D. La 1989)(citing *Mackay v. Easton*, 86 U.s. 619 (1873); and 18 Wright, Miller & Cooper, FEDERAL PRACTICE AND PROCEDURE, §4449 (1981). Also, because the Helix Defendants were not a party to the arbitration and were denied the opportunity to direct, cross, or redirect the testimony, the testimony is inadmissible against the Helix Defendants. *See e.g.*, F.R.E. 804(b); *New Jersey Turnpike Auth. v. PPG Indust.*, 197 F.3d 96 (3d Cir. 1999).

Despite repeated requests, GetPaid has failed to fully disclose and specify the "evidence" from the arbitration it seeks to use in this federal proceeding. To permit GetPaid to proceed to trial in this case without specifically identifying the documents, witnesses, and nature of testimony of each witness it intends to use from its private arbitration would promote "trial by ambush," in violation of the Federal Rules of Civil Procedure, the Local Rules, and this Court's pretrial protocols. *See Yohannon v. Keene Corporation*, 924 F.2d 1255, 1259-60 (3d Cir. 1991) (testimony excluded where party did not specify its intention to call witness or otherwise give notice of witness in its pretrial papers.); *Fashauer v. New Jersey Transit Rail Operations*, 57 F.3d 1269, 1287 (3rd Cir. 1995)(counsel not permitted to change positions taken at pretrial).

Accordingly, GetPaid should be required to adhere to the tenets of due process, and the Helix Defendants should not be forced to confront evidence that was used in the private arbitration between Honeywell and GetPaid. We respectfully request that the Court direct

PITNEY HARDIN LLP
Honorable Ann E. Thompson, U.S.D.J.
June 24, 2005
Page 15

GetPaid to identify all the discovery and information GetPaid has obtained from Honeywell in the arbitration since the filing of the Final Pretrial Order in this action that it intends to use at trial. Additionally, GetPaid should be required to submit briefing supporting its claim that it can use such discovery in this matter. The Helix Defendants should then have opportunity to oppose that application. Only then would this Court be in a position to consider these issues fully and fairly.

Respectfully submitted,

MICHAEL E. WALLER

cc: Hon. John J. Hughes, United States Magistrate Judge (By UPS/Overnight)
Bernard J. Bonn III, Esq. (By UPS/Overnight)
Shiva Farouki, Esq.
George C. Jones, Esq.